IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE CONSTANCE DUDLEY, | NO. C 06-1371 JW |
| Debtor. | **ORDER GRANTING EMERGENCY MOTION FOR STAY PENDING APPEAL; RELATING CIVIL CASE NUMBER 06-1671 JF** |

## I.  INTRODUCTION

An unsecured creditor, Charles K. Clapp ("Clapp") initiated this suit to appeal the decision of United States Bankruptcy Judge Arthur S. Weissbrodt approving a trustee's compromise. The compromise has the effect of returning to Clapp less than ten percent of the approximately $1,000,000 unsecured loan he gave to debtor Constance Dudley ("Debtor").  Presently before the Court is Clapp's emergency motion for a stay of Judge Weissbrodt's decision pending appeal.  The matter was heard on April 3, 2006.  Based upon all papers filed to date, the Court grants the motion for a stay.

## II.  BACKGROUND

The Debtor filed for Chapter 11 bankruptcy on April 4, 2003.  At the time, she apparently owed Clapp approximately $1,000,000 for an unsecured loan, and owed other creditors, mostly credit card companies, an additional $500,000.  Nearly two years later, the bankruptcy court appointed a Trustee and eventually converted the bankruptcy case to a Chapter 7.

1    There were only two potentially valuable assets to the Debtor's bankruptcy estate.  The first
2 was a lawsuit pending in the Monterey County Superior Court entitled <u>Constance Dudley and Mari
3 Dudley v. Joe Stillwago, et al.</u>,Case No. M71753 ("State Court Litigation").  The State Court
4 Litigation involves, among other things, loans made to Debtor and/or against properties owned by
5 Debtor.  Debtor alleges, among other things, that third parties forged documents to transfer or
6 encumber her rights in real properties and that these documents and transfers were without her
7 knowledge and authorization.  Significantly, Clapp is one of the defendants in the State Court
8 Litigation.[1]

9    The second and largest asset of the bankruptcy estate was the Debtor's rights to an income
10 stream from the Lincoln Trust dated February 25, 1997 ("Lincoln Trust").  Under the terms of the
11 Lincoln Trust, Debtor was arguably to receive a life estate interest in the building commonly known
12 as "Linoc," located at the corner of Ocean and Lincoln in Carmel, California ("Trust Property").
13 The life estate interest took the form of rents and net income from the Trust Property, which the
14 Debtor allegedly received at a rate of approximately $11,000 per month.  The Lincoln Trust was set
15 up pursuant to a settlement between Debtor and Paul Laub, Debtor's former husband, concerning the
16 dissolution of their marriage.

17    The parties involved in the bankruptcy case engaged in mediation at JAMS before the
18 Honorable Nat A. Agliano (Ret.), which ultimately led to an agreement between the bankruptcy
19 Trustee, the Lincoln Trust, the Debtor, and Mari Dudley, the debtor's mother, with the following six
20 terms:

21    1. The agreement will be approved by both the bankruptcy court and the Monterey
22       County Superior Court.
23    2. The Lincoln Trust will pay to the bankruptcy estate $175,000, within thirty days
24       after the entry of the orders of the bankruptcy court and the Monterey County

---

[1] The status of the State Court Litigation is unclear.  The Trustee represents that the State Court Litigation may have been dismissed on a demurrer.  <u>See</u> Trustee's Opposition to Motion for Stay Pending Appeal, p.1.

2

Superior Court approving the agreement.

3. The bankruptcy Trustee will assign to Debtor all of the bankruptcy estate's right, title and interest in the State Court Litigation. In the event Debtor prevailed in the State Court Litigation, the Debtor will receive seventy-five percent (75%) of the net proceeds (after attorneys' fees and costs); and the Debtor's mother will receive twenty-five percent (25%). Thereafter, thirty-five percent (35%) of Debtor's seventy-five percent (75%) will be transferred to the bankruptcy estate.

4. The bankruptcy estate will retain the $10,000 that it previously received from the Trust Property.

5. The parties will grant one another mutual general releases.

6. Upon approval of the agreement by the bankruptcy court and the Monterey County Superior Court, the bankruptcy Trustee will move to convert the case to a Chapter 7 liquidation proceeding.

On December 19, 2005, the bankruptcy Trustee filed a motion to approve the agreement (also referred to as "compromise"). Clapp opposed the motion to approve the compromise, and issued approximately thirteen subpoenas in an attempt to conduct discovery regarding the nature of Debtor's income from the Lincoln Trust.

On January 20, 2006, the bankruptcy court approved the motion to compromise and denied Clapp's motion to compel production of documents responsive to his subpoenas. Clapp filed an appeal and requested a stay. The bankruptcy court denied the request.

Clapp now appeals both rulings, and seeks a stay pending appeal from this Court. The Trustees of the Lincoln Trust and the bankruptcy Trustee oppose the motion for a stay pending appeal.

### III. STANDARDS

A motion for a discretionary stay under Rule 8005 of the Federal Rules of Bankruptcy Procedure is evaluated under standards similar to that of a motion for a preliminary injunction:

3

"[A]ppellants must show: (1) a likelihood of probable success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits are raised and the balance of hardships tips sharply in its favor." Southwest Voter Registration education Project v. Shelley, 344 F.3d 914, 917 (9th Cir. 2003) (en banc, per curiam); Roe v. Anderson, 134 F.3d 1400, 1401-1402 (9th Cir. 1998).

## IV.  DISCUSSION

Applying the standards set forth above, the Court finds that a stay is warranted because there are serious questions going to the merits of the appeal, and that the balance of hardships tips sharply in Clapp's favor.  This Court is being asked to review the bankruptcy court's determination that the compromise was reasonable, fair, and equitable.  In order to conduct such a review, the Court is required to consider all of the factors set forth in In re A&C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986), which are numerous and factually and legally complex.  Among other things, there are serious issues involving (1) whether the Lincoln Trust is a spendthrift trust under the bankruptcy laws; (2) whether Debtor's interest in the Lincoln Trust is a form of alimony, support and/or maintenance; (3) whether the Trustees of the Lincoln Trust have discretion to withhold future distributions to the Debtor; and (4) whether the income stream from the Trust Property could be sold.  The parties and the bankruptcy court spent considerable time on these issues, and apparently there are no clear cut answers.  This alone suggests to this Court that there are serious questions going to the merits of Clapp's appeal.

The hardship Clapp faces in the absence of a stay is clear: potential funds to pay him back for the $1,000,000 he loaned to Debtor will probably be dissipated.  In contrast, a stay is not likely to cause the Debtor, the Lincoln Trust, or other creditors severe hardship.  The parties opposing the stay argue that a stay would cause further delay, continue to leave interested parties uncertain as to their fate, and harm the public interest by preventing finality.  These generalized arguments against a stay do not begin to outweigh the specific and immediate harm Clapp faces if a stay is not granted.

//

4

## V.  CONCLUSION

For the reasons set forth above, the emergency motion for stay pending appeal is GRANTED.  The opening briefs on appeal must be filed and served no later than April 17, 2006; the responsive briefs must be filed and served no later than May 1, 2006.  The matter will be heard on Tuesday, May 16, 2006, at 1:00 p.m.

In the interim, the Trustees of the Lincoln Trust are granted leave to file their motion for approval of the compromise with the Monterey County Superior Court; however, the motion is subject to the outcome of the May 16, 2006 proceedings.

Further, the parties may file motion(s) to seek modification of the stay, provided there is good cause for such relief.

Finally, pursuant to Civil Local Rule 3-12, and based upon the representations of the party at the hearing, <u>In re Constance Dudley, Debtor</u>, civil case number 06-1671 JF is ordered RELATED to the above-entitled action.  Absent a stipulation, the parties shall brief Debtor's appeal in accordance with the schedule outlined above.

Dated: April 3, 2006                                      /s/James Ware
06cv1371stay                                              JAMES WARE
                                                          United States District Judge

5

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Christopher Alliotts calliotts@sulmeyerlaw.com

Sandi Meneely Colabianchi smcolabianchi@luce.com

Rebecca Connolly Rebecca.Connolly@grunskylaw.com,

debbie.yee@grunskylaw.com

Amy E Wallace Potter amy.wallace@dlapiper.com, andrea.ayala@dlapiper.com

**Dated: April 4, 2006**                                          **Richard W. Wieking, Clerk**

                                                  **By:\_/s/JW Chambers_____**
                                                      **Melissa Peralta**
                                                      **Courtroom Deputy**

**United States District Court**
For the Northern District of California